The OPTIMIST CLUB OF NORTH RALEIGH, NORTH CAROLINA, Plaintiff,

and

Joseph A. Page, Plaintiff-Intervenor,

v.

Randolph RILEY, District Attorney for the Tenth Prosecutorial District of the State of North Carolina, Defendant.

No. 82–293–CIV–5.

United States District Court, E.D. North Carolina, Raleigh Division.

June 9, 1982.
On Permanent Injunction Nov. 18, 1982.

Irvin B. Tucker, Jr., Blanchard, Tucker, Twiggs, Denson & Earls, Raleigh, N.C., Errol Copilevitz, Harding & Copilevitz, Kansas City, Mo., for plaintiff.

William R. Shenton, Asst. Atty. Gen., Raleigh, N.C., for defendant.

ORDER

DUPREE, Chief Judge.

This action is before the court for a ruling on plaintiffs' motion for a preliminary injunction to restrain enforcement of a recent amendment to the North Carolina General Statutes, which makes it unlawful for professional solicitors to solicit charitable contributions by telephone. N.C.G.S. § 14–401.12 (1981). After consideration of submissions by the parties and after argument of counsel at a hearing on June 2,

1982, the court finds that plaintiffs are entitled to relief and their motion for preliminary injunction is granted.[1]

Plaintiffs are the Optimist Club of North Raleigh, a charitable corporation organized under the laws of North Carolina and Joseph A. Page, a professional solicitor who solicits funds for charitable purposes by telephone and who has been recently employed by the Optimist Club to solicit charitable contributions by telephone through the sale of tickets for a variety show scheduled for October 13, 1982. Defendant is Randolph Riley, the district attorney of Wake County, North Carolina, who is charged by law with enforcement and administration of the Act in Wake County.

N.C.G.S. § 14–401.12 became effective on October 1, 1981. It provides in pertinent part that

"(a) Any professional solicitor who solicits by telephone contributions for charitable purposes or in any way compensates another person to solicit by telephone contributions for charitable purposes shall be guilty of a misdemeanor. Any person compensated by a professional solicitor to solicit by telephone contributions for charitable purposes shall be guilty of a misdemeanor."

A "professional solicitor" is defined as "any person who, for a financial or other consideration, solicits contributions for or on behalf of a charitable organization." N.C.G.S. § 14–401.12(b)(4). Although a professional solicitor is not prohibited from soliciting on behalf of profit-making organizations, the statute imposes criminal sanctions when solicitations are designed to further charitable purposes, which under the statute include "any charitable, benevolent, religious, philanthropic, environmental, public or social advocacy or eleemosynary purpose for religion, health, education, social welfare, art and humanities, civic and public interest." N.C.G.S. § 14–401.-12(b)(1). A charitable purpose is presumed

under the statute, if a person making the solicitation states or implies that some other named person or organization, other than the professional solicitor or his employees, is a sponsor or endorser of the solicitations who will share in the proceeds that result from the telephone solicitation. N.C.G.S. § 14–401.12(c).

Plaintiffs assert that because the statute completely prohibits the use of the telephone by professional solicitors for charitable purposes, they are foreclosed from raising funds for the charities they have supported in the past. If it is denied the use of professional solicitors, the Optimist Club which was previously licensed to solicit funds will no longer be able to do so because of its small membership, time constraints on its members and lack of fundraising expertise. Plaintiff Joseph Page, who is employed by a professional fundraising organization, has been a professional solicitor for many years. Prior to the passage of N.C.G.S. § 14–401.12, he was engaged in fund-raising in North Carolina through telephone solicitations of contributions for charitable purposes. At this time the statute under attack has effectively put him and his employer out of business. The plaintiffs therefore argue that the statute impermissibly forecloses a mode of communication which is protected by the First Amendment and interferes with rights of professional solicitors to earn a livelihood. Because the statute prohibits only telephone solicitation for charitable purposes and not solicitation by telephone for noncharitable purposes, plaintiffs also assert that the statute violates their Fourteenth Amendment right to equal protection.

Although defendant concedes that the statute involves a First Amendment issue, he denies that it impermissibly infringes on any constitutionally protected rights of plaintiffs, contending rather that it simply poses a reasonable restriction on the manner in which charitable solicitations are conducted. Because the statute's application is

---

1. The action came before the court on March 24, 1982, for a hearing on plaintiff's motion for a temporary restraining order and defendant's motion to dismiss for lack of standing. In an order dated April 9, 1982, it was held that plaintiff had standing to maintain the action, but was not entitled to a temporary restraining order.

expressly limited to telephone solicitations by professional solicitors, defendant further contends that charitable organizations may conduct their own telephone solicitation campaigns. Further, the statute permits professional solicitors to be hired to conduct, manage, or consult on a particular solicitation campaign. Finally, anyone is permitted to solicit contributions in person or through the mail, because the statute imposes no restriction on those activities. Therefore, defendant argues that the statute protects the public and that the limitation is on the manner in which the charitable solicitations are conducted rather than a restriction on the content of the charitable solicitation.

■ The statute's validity must be analyzed in terms of protected speech and whether the restriction is necessary to vindicate a compelling state interest and is narrowly drawn to achieve that end. *See Widmar v. Vincent,* 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981). Charitable solicitations are afforded protection because they involve a variety of speech interests including communication and dissemination of views, ideas and causes. *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 632, 100 S.Ct. 826, 833–834, 63 L.Ed.2d 73 (1980). The importance of disseminating information on significant issues of the days and matters which are within the public interest have also been afforded protection in the area of commercial speech. *E.g., Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975); *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). The court therefore rejects defendant's assertion that this statute is narrowly tailored to prevent fraud by regulating the type and manner of charitable solicitations and concludes instead that the plaintiffs have shown that the total ban on telephone solicitation infringes on the First Amendment rights of professional solicitors and has a substantially restrictive effect not only on the solicitors' right to communicate, but also on the ability of charitable organizations to conduct different types of solicitation campaigns. *Village of Schaumburg v. Citizens, supra.*

■ While it is well settled that commercial speech may be protected if it implicates First Amendment rights, the court must also consider whether there is a substantial governmental interest and if so, whether the regulation directly advances the governmental interest in the least intrusive fashion to serve that particular interest. *Central Hudson Gas v. Public Service Commission,* 447 U.S. 557, 561–566, 100 S.Ct. 2343, 2348–2349, 2351, 65 L.Ed.2d 341 (1980). The state asserts that it has a substantial interest in protecting citizens from fraud and the potential abuses associated with charitable solicitations. In the state's view, telephone solicitations present a greater potential for misleading and deceptive practices, because of the interpersonal contact and the immediate uninvited entry into the listener's living room. In the alternative, the state contends that the statute is a legitimate time, place or manner restriction on plaintiffs' efforts to solicit funds over the telephone and as such does not constitute a total ban on communication, but is merely limitation on one mode of charitable solicitation.

Plaintiffs do not dispute that charitable solicitations may be subject to regulation, for it is recognized there is a legitimate state interest in protecting its citizens, "from abuse of practices in the solicitation of funds for charity . . . ." *Larson v. Valente,* 456 U.S. 228, 102 S.Ct. 1673, 1685, 72 L.Ed.2d 33 (1982). However, plaintiffs do not agree that the restriction on telephone solicitation imposed by the statute is necessary to protect this legitimate state interest.

It appears there are less restrictive means available to the state. The Charitable Solicitation Licensure Act, N.C.G.S. § 131C–1, *et seq.,* was enacted to protect the general public and to establish and to enforce stan-

dards for the use and solicitation of charitable funds. This comprehensive scheme of registration and disclosure provides an alternative method to monitor the practices of professional solicitors and to protect against fraud and deceptive practices. Further, if a fraud is perpetrated by a professional solicitor, he may be prosecuted under the applicable criminal laws. These alternatives do not infringe on a mode of communication protected by the First Amendment and do not constitute a prior restraint, but nevertheless protect the public from any deceptive practices which may be associated with charitable solicitation without divesting an individual's discretion to reject a particular solicitation.[2] *See Martin v. City of Struthers,* 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943).

In determining whether preliminary injunctive relief should issue, the court is controlled by the standards enunciated in *Blackwelder Furniture Company v. Seilig Manufacturing Company,* 550 F.2d 189 (4th Cir.1977). Without preliminary injunctive relief, the Optimist Club which has neither the staff nor the expertise will be unable to begin its telephone solicitation campaign to sell tickets for the upcoming variety show. The threat of criminal prosecution if Joseph Page uses the telephone to solicit funds constitutes per se irreparable injury. *See Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Johnson v. Bergland,* 586 F.2d 993 (4th Cir.1978). Thus the inability to conduct an expeditious and successful solicitation campaign will have a harmful effect on the charitable organization and its beneficiaries and will result in a disservice to the public interest. On the other hand, the harm to the defendant should injunctive relief issue will be minimal. The contention that the public will be deceived by a solicitation to buy tickets when they can reject the solicitation is unpersuasive. *See* Footnote 2. Any potential fraud can be clearly prevented by other less restrictive means. Thus, given the First

Amendment interest and plaintiffs' time constraints, the balance of hardships plainly favors the plaintiffs. These considerations together with the plaintiffs' likelihood of success on the merits and the public interest in protecting First and Fourteenth Amendment rights leads to the conclusion that the court should grant the requested relief.

Pending final determination of the action on the merits defendant will be enjoined from enforcing against these plaintiffs the provisions of N.C.G.S. § 14–401.12.

SO ORDERED.

## ON PERMANENT INJUNCTION

In this action plaintiffs, the Optimist Club of North Raleigh, a charitable corporation, and Joseph A. Page, a professional solicitor of funds for charitable corporations, have attacked on First and Fourteenth Amendment grounds the constitutionality of Section 401.12 of Chapter 14 of the General Statutes of North Carolina which in substance makes it a misdemeanor for a professional solicitor to solicit by telephone contributions for charitable purposes. The action is now before the court on cross-motions for summary judgment.

By an order dated June 9, 1982 the court granted the motion of plaintiffs for a preliminary injunction restraining enforcement of the statute in question against them. Upon consideration of the submissions of the parties in support of their respective positions the court is of opinion that the plaintiffs are entitled to the relief sought herein, and on the basis of the reasons stated in the order of June 9, 1982 it is now

ORDERED, ADJUDGED AND DECREED:

1. That North Carolina General Statute 14–401.12 contravenes the First and Fourteenth Amendments to the Constitution of the United States and is therefore void and unenforceable.

---

2. We were told on oral argument that the show tickets sought to be sold by telephone by the plaintiffs in this case would be mailed to the purchasers who would then be obligated to send in the purchase money. Thus while the purchaser would always be assured of getting what he paid for, the risk of nonpayment would remain on the plaintiffs.

2. That the defendant be and he is hereby permanently enjoined from enforcing the provisions of N.C.G.S. 14–401.12 against the plaintiffs in this action.

Let the defendant pay the costs.