## PLANNED PARENTHOOD LEAGUE OF MASSACHUSETTS, INC. *vs.* ATTORNEY GENERAL.

Suffolk. January 10, 1984. — April 23, 1984.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Constitutional Law,* Freedom of speech and press, Telephone solicitation.

General Laws c. 68, § 28, prohibiting charitable organizations from using paid telephone operators to solicit contributions, is invalid as infringing on the freedom of speech protected by the First Amendment to the United States Constitution. [712-717]

CIVIL ACTION commenced in the Superior Court Department on August 24, 1982.

The case was heard by *Fine,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Catharine W. Hantzis (Dana L. Mason,* Assistant Attorney General, with her) for the Attorney General.

*Peter B. Ellis (Gerald L. Neuman* with him) for the plaintiff.

LIACOS, J. The Attorney General, through his division of public charities, appeals from a judgment entered in the Superior Court in Suffolk County declaring G. L. c. 68, § 28,[1]

---

[1] General Laws c. 68, § 28, inserted by St. 1964, c. 718, § 1, provides: "No charitable organization shall conduct or make any solicitation of contributions by means of paid telephone operators whose principal duties are the conducting of such telephone solicitation."

A "charitable organization" is defined as "any benevolent, educational, philanthropic . . . organization or one holding itself out to be a charitable organization or one which has received a tax exemption from the United States Government or any state or municipality by reason of its charitable nature." G. L. c. 68, § 18.

The Attorney General, through his division of public charities, is charged with enforcement of this section. See G. L. c. 68, § 30. See also § 30 (*b*)-(*e*) (setting forth civil and criminal sanctions for violations of § 28).

inapplicable to certain recruitment and fund-raising activities conducted by Planned Parenthood League of Massachusetts, Inc. (PPLM), and declaring the statute facially unconstitutional under the First Amendment to the Federal Constitution.[2] In August, 1982, PPLM had filed a complaint in the Superior Court seeking declaratory and injunctive relief which would enable the organization to conduct its recruitment and fund-raising campaign without subjecting itself to prosecution under G. L. c. 68, § 28. The case was heard on a statement of agreed facts in February, 1983, and the judge issued her order on March 2, 1983. The Attorney General appealed. We granted the joint application of the parties for direct appellate review on July 26, 1983.

The Attorney General contends that § 28 is a lawful statute aimed at protecting individuals from the intrusiveness of telephone calls soliciting charitable contributions.[3] He also claims that § 28 aids in preserving the integrity and efficacy of charitable organizations in the Commonwealth. PPLM asserts that § 28 is facially unconstitutional as the statute constitutes an unjustifiable infringement on a charitable organization's constitutional right of free speech. We conclude that the Superior Court judge correctly determined the statute to be facially invalid under the First Amendment to the Federal Constitution.[4]

The parties stipulated to the following relevant facts. PPLM is a charitable organization whose purpose is to promote the exercise of informed reproductive choice by individuals in the

---

[2] United States Const. amend. I, provides in pertinent part: "Congress shall make no law . . . abridging the freedom of speech . . . ." See also art. 16 of the Massachusetts Declaration of Rights, as amended by art. 77 of the Amendments to the Massachusetts Constitution ("right of free speech shall not be abridged").

[3] The Attorney General does not argue that the judge erred in ruling that the recruitment and fund-raising activities of PPLM contemplated in 1982 were not precluded by § 28. The issue is deemed waived. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). It appears that by agreement of the parties, PPLM has continued such activities pending this court's decision.

[4] As the trial judge noted, neither party argued that different standards would apply under art. 16 of the Massachusetts Declaration of Rights.

Commonwealth.[5] PPLM engages in certain lobbying activities with respect to legislative and other governmental issues of concern to the organization and its members. To coordinate and conduct these activities, PPLM relies mainly on the efforts of volunteers in the State who, on request, will write, call, or visit their elected representatives or other government officials concerning issues of importance to PPLM. These volunteers comprise what PPLM refers to as its legislative alert network (network). Participants in the network are not required to be associate members of PPLM. Members and associate members of PPLM, according to the organization's by-laws, must contribute $25 annually to the organization.

Because previous attempts at recruiting new network volunteers by mail had yielded disappointing results, PPLM decided, in early 1982, to conduct a campaign by telephone using a professional consultant and paid telephone operators.[6] PPLM sought to recruit, through this campaign, new participants in the network and new associate members of PPLM from current associate members, donors, and persons who previously had expressed an interest in the organization.

PPLM decided to combine recruitment with fund-raising so as not to duplicate the effort and expense of a separate campaign. The consultant and telephone operators followed PPLM's format for the telephone campaign. That format prescribed that at least 75% of each telephone call was to be devoted to a discussion of matters relating to network recruitment, and no more than 25% of the conversation was to involve a solicitation of financial contributions to PPLM.[7] PPLM commenced its campaign on September 28, 1982.

---

[5] PPLM is recognized by the Internal Revenue Service as a charitable and educational organization exempt from Federal taxation under I.R.C. § 501(c)(3), and is incorporated pursuant to G. L. c. 180.

[6] PPLM had also experienced difficulty in obtaining volunteers to conduct telephone campaigns.

[7] The script used as a guideline for these telephone calls requested that an operator begin each call by discussing legislative actions taken on behalf of PPLM in the United States Congress and the Massachusetts General Court. Then the operators were to describe the objectives and functions of

As we have previously noted, the trial judge ruled § 28 inapplicable to the facts of this case, but went on to rule that § 28 is unconstitutional on its face. The latter issue is the only one the parties have argued. Although the issue of the constitutionality of § 28 might be viewed as not properly before us, in view of the public interest involved and the uncertainty concerning when charities in the Commonwealth may subject themselves to liability under this statute,[8] we address the First Amendment question. See *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943).

*The constitutionality of G. L. c. 68, § 28.* The parties agree that telephone solicitation is a much more effective way of procuring contributions than direct mail requests. PPLM contends that § 28 impermissibly impairs this efficacious method of fund-raising which is protected by the First Amendment. PPLM claims that the statute cannot withstand constitutional scrutiny since its content-based restriction on protected speech is not precisely drawn to promote the asserted State interests.

The Attorney General asks us to uphold § 28 by employing the constitutional analysis used where restrictions are placed on governmentally controlled property. See *Perry Educ. Ass'n* v. *Perry Local Educators' Ass'n,* 460 U.S. 37, 50-54 (1983). Under this standard the Attorney General claims that § 28 constitutes a reasonable regulation which serves the purposes of protecting residential privacy and promoting the viability and integrity of charitable organizations.

The United States Supreme Court has established definitively that "charitable solicitations in residential neighborhoods," on the streets or from door to door, constitute protected speech under the First Amendment. *Schaumburg* v. *Citizens for a Better Env't,* 444 U.S. 620, 632-633 (1980). See *Martin* v.

---

the network and ask recipients if they were willing to participate. The operators also were to ask recipients whether they wanted to become associate members or renew their associate membership. Finally, at the end of each call, the operators were to ask recipients whether they would like to make a contribution to PPLM.

[8] Prior to this action, the Attorney General had pending five civil actions for enforcement of § 28.

*Struthers,* 319 U.S. 141, 145 (1943).[9] Other Federal courts have held that telephone solicitations for charitable contributions are within the ambit of the First Amendment's free speech clause. *Optimist Club* v. *Riley,* 563 F. Supp. 847, 849 (E.D.N.C. 1982). See also *Walker* v. *Dillard,* 523 F.2d 3, 4 (4th Cir.), cert. denied, 423 U.S. 906 (1975) (statute criminalizing use of "threatening," "vulgar" language on telephone invalid on overbreadth ground). Accord *Radford* v. *Webb,* 446 F. Supp. 608, 610-611 (W.D.N.C. 1978), aff'd 596 F.2d 1205 (4th Cir. 1979). "The statute's validity must be analyzed in terms of protected speech and whether the restriction is necessary to vindicate a compelling state interest and is narrowly drawn to achieve that end." *Optimist Club* v. *Riley, supra.*

The United States Supreme Court has recognized that a State or municipality has the authority "to protect its citizens from crime and undue annoyance by regulating soliciting and canvassing." See *Hynes* v. *Mayor of Oradell,* 425 U.S. 610, 616-617 (1976). Restrictions on charitable solicitations, however, "must be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues, and for the reality that without solicitation the flow of such information and advocacy would likely cease." *Schaumburg* v. *Citizens for a Better Env't, supra* at 632. This is particularly true with respect to educationally oriented organizations like PPLM, as their primary functions involve obtaining and disseminating information on social issues of concern to them, and fund-raising is normally combined with discussing such matters.

---

[9] The Court also has expressed consistently the view that the First Amendment applies equally to an association or an individual. "The inherent worth of the speech in . . . informing the public does not depend upon the identity of its source, whether . . . association . . . or individual." *Consolidated Edison Co.* v. *Public Serv. Comm'n,* 447 U.S. 530, 533 (1980), quoting *First Nat'l Bank* v. *Bellotti,* 435 U.S. 765, 777 (1978).

State action restricting charitable solicitations may be upheld only if the prohibition is a reasonable time, place, or manner regulation, or is in furtherance of a substantial governmental interest, and the restriction on First Amendment rights is no greater than necessary to promote that interest. See *Consolidated Edison Co.* v. *Public Serv. Comm'n,* 447 U.S. 530, 535-536 (1980). See *Opinion of the Justices,* 363 Mass. 909, 916 (1973).

To effectuate legitimate governmental goals, a restriction may regulate in a reasonable way the time, place, or manner of speech, provided that the regulation is applicable to all speech, regardless of content. *Consolidated Edison Co.* v. *Public Serv. Comm'n, supra* at 536. "The First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic." *Id.* at 537. Since § 28's prohibition applies only to bar paid solicitation by charities, the statute cannot be considered a time, place, or manner restriction. See G. L. c. 68, § 28. See also G. L. c. 68, § 18.

Content-based restrictions on protected speech have been upheld only in the narrow situation where a private party has asserted a right of access to governmentally owned facilities, and the government has shown that partisan speech could jeopardize the functioning of these facilities. See, e.g., *Greer* v. *Spock,* 424 U.S. 828, 839 (1976) (political activities may be prohibited on military base). *Lehman* v. *Shaker Heights,* 418 U.S. 298, 302, 304 (1974) (city transit system not compelled to accept political advertisements for display on vehicles). Section 28 regulates speech in the private forum and therefore does not fall within this narrow exception to the constitutional prohibition on content-based restrictions.[10]

---

[10] For this reason, we dismiss the Attorney General's argument that regulations on telephonic speech, although concerning communication in a private forum, are subject to a lesser degree of scrutiny. Analogizing telephones to letter boxes and radio broadcasts, the Attorney General asserts that we should apply the same type of analysis to § 28 and uphold the statute as a reasonable restriction in light of the objectives which it seeks to

Section 28 thus may be sustained as a restriction on protected speech only if the statute is narrowly drawn to further a substantial governmental interest without unnecessarily impairing First Amendment rights. See *Schaumburg* v. *Citizens for a Better Env't,* 444 U.S. 620, 637 (1980); *Optimist Club* v. *Riley, supra* at 849. The analysis of a judge of a Federal District Court in the *Optimist Club* case, *supra,* is instructive. The judge held violative of the First Amendment a statute which was similar to § 28 and which made it a misdemeanor for "[a]ny professional [fundraiser to solicit] . . . telephone contributions . . . or in any way [compensate] another person to solicit by telephone contributions for charitable purposes." *Id.* at 848, quoting N.C. Gen. Stat. § 14-401.12 (1981). Although the statute served an important State interest in protecting its citizens from fraudulent practices by charities which used paid solicitors, the court determined that a different statute, which required charities to disclose the purposes for which contributions were used, sufficiently protected this interest by a less intrusive means. *Id.* at 849-850. See *Schaumburg* v. *Citizens for a Better Env't, supra* at 638-639.

The Attorney General asserts that § 28 is aimed at protecting people from unwanted charitable solicitation calls. The statute, he argues further, is meant to promote the viability of charities by ensuring that a profusion of telephone solicitations does not deter giving, and that funds from charities are not squandered on wasteful fund-raising schemes.

Yet § 28 does virtually nothing to promote the State's alleged substantial interest in residential privacy. The statute does not

promote. However, all of the cases on which the Attorney General relies in making this argument are inapplicable to the present matter because they deal with a person's assertion of access to property that is either owned by the government or under substantial government regulation. See, e.g., *Perry Educ. Ass'n* v. *Perry Local Educators' Ass'n, supra* (restriction on rival union's access to interschool mail facilities constitutional as in furtherance of school property's intended use); *United States Postal Serv.* v. *Council of Greenburgh Civic Ass'ns,* 453 U.S. 114, 128-129 (1981) (person's mail box authorized depository for U.S. mail; no First Amendment right to place unstamped mail within); *FCC* v. *Pacifica Found.,* 438 U.S. 726, 748 (1978) (FCC has authority to limit times of day when indecent material may be broadcast into persons' homes).

preclude unlimited telephone solicitations by volunteers, or by paid operators who do not conduct fund-raising as a principal part of their work for the charity. Moreover, the statute does nothing to prohibit commercial or political solicitation by telephone.[11]

There is no evidence on the record to show that a proliferation of telephone solicitations will diminish the willingness of people to donate to charitable organizations. "Mere speculation of harm does not constitute a compelling state interest," *Consolidated Edison Co.* v. *Public Serv. Comm'n, supra* at 543. Section 28 cannot be sustained on this basis.

The Commonwealth has a substantial interest in ensuring that charitable organizations do not waste their contributions on frivolous fund-raising schemes. Prohibiting charitable solicitations by paid telephone operators is not the least restrictive means to further this objective. Charities could still squander funds in other ways, including other development campaigns which do not involve telephone solicitations.

Even assuming that the statute does serve the purpose of deterring wasteful fund-raising schemes by charities, its general prohibition on charitable solicitation unnecessarily impinges on protected speech. General Laws c. 68, § 19, which requires charitable organizations to disclose their income and expenses for each fiscal year and the purposes for which contributions shall be used, provides an efficacious means of monitoring the spending policies of charities, and does not impair First Amendment freedoms.[12]

---

[11] Assuming that § 28 furthers the State's interest in residential privacy to some extent, there are certainly less intrusive and more practicable ways of serving this objective. Bills have been filed in other States which would enable individuals to request that the telephone company place an asterisk next to their names in the directory to indicate their unwillingness to receive solicitation calls. See Note, Give Me a Home Where No Salesmen Phone: Telephone Solicitation and the First Amendment, 7 Hastings Const. L.Q. 129, 158 (1979-1980) (bills filed in Indiana and Wisconsin Legislatures). See also *id.* at 159 (congressional proposals for bill requiring solicitors to pay for list of residential subscribers unwilling to receive commercial solicitations).

[12] General Laws c. 68, § 19, as amended by St. 1980, c. 572, § 22, provides in relevant part: "Every charitable organization which intends to

Because G. L. c. 68, § 28, significantly abridges First Amendment rights and is not precisely drawn to further a substantial governmental interest, we hold that the statute is facially unconstitutional under the First Amendment.[13]

*Judgment affirmed.*

solicit contributions from persons in this commonwealth . . . shall, prior to any solicitation, file a registration statement with the division . . . . Such statements . . . shall contain the following information: . . . a copy of the balance sheet and income and expense statement for the organization's immediate preceding fiscal year audited by an independent public accountant; . . . the principal purpose or purposes for which the contributions to be solicited shall be used; . . . the names of the individuals or officers of the organization who shall have final responsibility for the custody of the contributions; [and] . . . the names of the individuals or officers of the organization responsible for the final distribution of the contributions."

Other sections of the statute are relevant. See, e.g., G. L. c. 68, § 20 (certain charities exempt from provisions of § 19, e.g., religious organizations established for religious purposes, educational institutions which are exempt from Federal income taxation, charitable organizations which do not actually raise or receive contributions in excess of $5,000 during a calendar year, if all of their functions are carried on by persons who are unpaid for their services and if no part of their assets or income inures to the benefit of, or is paid to any officer or member). The Attorney General or a district attorney may institute an action for injunctive relief or such other appropriate relief against any charitable organization which has violated the registration and disclosure provisions of § 19 or "has participated or is about to participate in any solicitation . . . by employing any . . . scheme . . . to defraud or obtain money or other property." See G. L. c. 68, § 30 (*e*), inserted by St. 1964, c. 718, § 1.

[13] We need not consider PPLM's arguments that the statute is unconstitutionally vague, or a violation of equal protection or freedom of association.