**STATE of Tennessee, Plaintiff–Appellant,**

v.

**SMOKY MOUNTAIN SECRETS, INC., d/b/a Taste of Tennessee, et al., Defendants–Appellees.**

Supreme Court of Tennessee, at Jackson.

Oct. 28, 1996.

Charles W. Burson, Attorney General & Reporter, Michael E. Moore, Solicitor General, Elizabeth P. McCarter, Senior Counsel, Nashville, for Plaintiff–Appellant.

S. Russell Headrick, Paul E. Prather, Kathy Laughter Laizure, Armstrong, Allen, Prewitt, Gentry, Johnston & Holmes, Memphis, for Defendants–Appellees.

## OPINION

REID, Justice.

This case presents for review the decision of the Court of Appeals regarding the constitutionality of certain provisions of the Tennessee Charitable Solicitations Act. The case, which was initiated by the State as an action for declaratory and injunctive relief, is before the Court on a Rule 9 interlocutory appeal from judgments entered on motions for summary judgment and dismissal. See Tenn. R.App. P. 9. The State appeals from the decision that certain provisions of the Act which discriminate against professional solicitors violate the equal protection provisions of the federal and state constitutions, and from the decision that certain provisions of the Act which impose financial obligations on professional solicitors violate the freedom of speech provisions of those constitutions. The defendants appeal from the decision that certain provisions of the Act which require additional disclosures by professional solicitors do not violate the freedom of speech or equal protection provisions of the state and federal constitutions.

## The Case

Tennessee's Charitable Solicitation Law was enacted in 1976, as the Solicitation of Charitable Funds Act.[1] As stated in the caption, it was "to regulate solicitation of funds for charitable organizations, to authorize the Secretary of State to regulate professional solicitors and charitable organizations: [to determine] exempt organizations, [establish] registration procedures, [and prohibit] acts and penalties...."

Provisions of the original Act which prohibited solicitations by telephone and also those that limited the professional solicitor's fee to 15 percent of gross contributions were found by this Court in *WRG Enter., Inc. v. Crowell*, 758 S.W.2d 214 (Tenn.1988), to be burdens on free speech prohibited by Article I, Sections 8 and 19 of the Tennessee Constitution and the First and Fourteenth Amendments to the United States Constitution. Following the decision in *WRG Enterprises* and the decision of the United States Supreme Court in *Riley v. National Fed'n of the Blind*, 487 U.S. 781, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988), the legislature enacted the Charitable Solicitation Reform Act of 1989, which was codified at Tenn.Code Ann. §§ 48–3–501 to 48–3–520 (Supp.1989).[2]

The Act provides that "professional solicitors" as defined by Section 48–3–501(5) are required to comply with certain registration, fee, notice, and disclosure provisions as conditions of engaging in charitable solicitation. Professional solicitors are required to register with the Secretary of State, Section 48–3–507(a); pay an annual registration fee, Section 48–3–507(d); post a $10,000 bond at the time of registration, Section 48–3–507(c); file a solicitation notice prior to the commencement of each solicitation campaign, Section 48–3–513(g)(4); file copies of solicitation literature and texts used in the campaign, Sec-

1. 1976 Tenn. Public Acts, ch. 735.

2. The current version of the Act is codified at Tenn.Code Ann. §§ 48–101–501 to 48–101–521 (Supp.1996). This case arose under the 1989 Act.

tion 48–3–513(j)(3); and disclose at the point of solicitation that they are professional solicitors who will receive a portion of the contributions received, Section 48–3–513(j)(1). Employees of professional solicitors are required to register and pay an annual fee, Tenn.Code Ann. § 48–3–507(b). Salaried employees and volunteers of charitable organizations are not included in the definition of professional solicitor and are exempted from these provisions. Section 48–3–501(5).

The defendant, Smoky Mountain Secrets, Inc., is a Tennessee corporation located in Alcoa, Tennessee with an office in Memphis. It engages in the solicitation of charitable contributions for law enforcement organizations in several states. The defendant Monte Birch is the manager of the Memphis office of Smoky Mountain Secrets and, in addition to personally soliciting contributions, he directs the hiring of telephone solicitors and supervises them in their solicitation of charitable contributions from that office.

Smoky Mountain Secrets entered into a contract with the Fraternal Order of Police No. 35, which is a Tennessee not-for-profit corporation located in Memphis, to conduct a solicitation campaign in the Memphis area to benefit the Fraternal Order of Police's drug abuse awareness program. The campaign involved the sale of packages of sauces, jellies, and preserves furnished by Smoky Mountain Secrets. Pursuant to the agreement, the Fraternal Order of Police was to receive $3.75 on each sale of $29.95.

On April 23, 1992, two compliance auditors from the office of the Secretary of State, which is charged with the administration and enforcement of the Act,[3] made an audit of Smoky Mountain Secret's Memphis office. The auditors' report stated the following violations of the statute: Smoky Mountain Secrets was not properly registered, the telephone solicitors did not disclose that they were professional solicitors, the telephone solicitors stated that they were calling for the Memphis State Trooper Fraternal Order of Police, the receipts given to contributors did not make proper disclosures, and the delivery staff wore name tags identifying themselves as Fraternal Order of Police Special Programs Staff.

On January 6, 1993, the State filed a complaint seeking declaratory and injunctive relief and civil penalties on the grounds that the defendants had violated the provisions of the Charitable Solicitation Act as amended by the Tennessee Charitable Solicitation Reform Act of 1989. Specifically, the complaint alleges that the defendant violated the Act by engaging in unfair and deceptive acts and practices, in failing to register and submit required information to the Secretary of State's office, and in failing to make required disclosures to potential contributors during the course of the solicitation campaign in 1992.

On January 25, 1993, Smoky Mountain Secrets filed a counterclaim for declaratory judgment based on the freedom of speech and equal protection provisions of the United States Constitution and the Tennessee Constitution. The counterclaim seeks to bar the enforcement of the Charitable Solicitations Act against the defendants on the grounds that the registration, fee, disclosure, and enforcement provisions of the Act, both on their face and as applied, violate the constitutional rights of professional solicitors.

The trial court held that those provisions of the Act which are the subject of this appeal violate the equal protection provisions of the state and federal constitutions. The Court of Appeals affirmed the trial court's holding that the registration, notice, bond, and fee provisions of the Act, which are applicable to professional solicitors but not to employees and volunteers of charitable organizations, violate the equal protection provisions of the state and federal constitutions and held, further, that the registration, bond, and fee provisions of the Act violate the freedom of speech provisions of those constitutions. The Court of Appeals held that the disclosure provisions of Tenn.Code Ann. § 48–3–513(j)(1), requiring professional solicitors to disclose their professional status and the fact that they receive a portion of the funds contributed, do not impermissibly burden speech and are narrowly tailored to

---

**3.** Tenn.Code Ann. § 48–3–503.

achieve the State's interest in preventing fraud.

The Act imposes requirements and restrictions upon the solicitation of contributions to charitable organizations by persons defined as "professional solicitors," but exempts from those requirements and restrictions solicitations by salaried officers and employees of charitable organizations. This classification of persons who solicit charitable contributions for the purpose of regulation raises freedom of speech and equal protection issues.

### Freedom of Speech Analysis

Both this Court and the United States Supreme Court have held that charitable solicitation is constitutionally fully protected speech.[4] In holding that portions of the Tennessee Charitable Solicitations Act violate constitutional guarantees of free speech, this Court stated:

> The challenge mounted here is directed to purported violations of both the First and Fourteenth Amendments to the United States Constitution and Article I, Sec. 19 of the Tennessee Constitution. This Court has previously recognized that regulation of First Amendment rights is subject to exacting judicial review, as well as the duty imposed upon the State to demonstrate that any burden placed on Free Speech Rights must be justified by a compelling State interest. *See Bemis Pentecostal Church v. State,* 731 S.W.2d 897, 903 (Tenn.1987).

*WRG Enter., Inc. v. Crowell,* 758 S.W.2d at 215. The United States Supreme Court refused to accept the argument that charitable solicitation is commercial speech, and, therefore not entitled to full constitutional protection:

> Our lodestars in deciding what level of scrutiny to apply to a compelled statement must be the nature of the speech taken as a whole and the effect of the compelled statement thereon. This is the teaching of *Schaumburg* and *Munson,* in which we refused to separate the component parts of charitable solicitations from the fully protected whole. Regulation of a solicitation "must be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech ..., and for the reality that without solicitation the flow of such information and advocacy would likely cease." [*Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 632, 100 S.Ct. 826, 834, 63 L.Ed.2d 73 (1980), *quoted in Secretary of State of Maryland v. Joseph H. Munson Co.,* 467 U.S. 947, 959–60, 104 S.Ct. 2839, 2848, 81 L.Ed.2d 786 (1984).] *See also Meyer v. Grant,* 486 U.S. 414, 422, n. 5, 108 S.Ct. 1886, 1892, n. 5, 100 L.Ed.2d 425 (1988); [*Thomas v. Collins,* 323 U.S. 516, 540–41, 65 S.Ct. 315, 327, 89 L.Ed. 430 (1945)]. Thus, where, as here, the component parts of a single speech are inextricably intertwined, we cannot parcel out the speech, applying one test to one phrase and another test to another phrase. Such an endeavor would be both artificial and impractical. Therefore, we apply our test for fully protected expression.

*Riley v. National Fed'n of the Blind,* 487 U.S. at 796, 108 S.Ct. at 2677.

 Statutes that regulate solicitation, regulate speech on the basis of its content. Therefore, any regulation imposing limitations on the right to solicit charitable contributions must withstand "exacting First Amendment scrutiny." *Id.* at 789, 108 S.Ct. at 2673. This Court has recognized that "all basic rights of free speech are subject to reasonable regulation," *H & L Messengers, Inc. v. City of Brentwood,* 577 S.W.2d 444, 451 (Tenn.1979), and that in determining

---

4. The First Amendment states, "Congress shall make no law ... abridging the freedom of speech...."

Article I, Section 19 states, "[t]he free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty."

This Court has held that Article I, Section 19 is "a substantially stronger provision than that contained in the First Amendment to the Federal Constitution." *Press, Inc. v. Verran,* 569 S.W.2d 435, 442 (Tenn.1978). However, that distinction need not be noted in this decision.

whether a regulation is reasonable there must be a "balancing of the freedom of expression against recognized competing rights." *State v. Marshall,* 859 S.W.2d 289, 305 (Tenn.1993) (Reid, C.J., concurring and dissenting). The analysis to be applied when reviewing a challenge to a statute based on an impermissible burden on free expression is as follows:

Regulations which restrain speech on the basis of its content presumptively violate the First Amendment. Such a regulation may be upheld only if the State can prove that "the burden placed on free speech rights is justified by a compelling state interest. The least intrusive means must be utilized by the State to achieve its goals and the means chosen must bear a substantial relation to the interest being served by the statute in question." *Bemis Pentecostal Church v. State,* 731 S.W.2d at 903.

*Freeman v. Burson,* 802 S.W.2d 210, 213 (Tenn.1990), *rev'd,* 504 U.S. 191, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992) (citations omitted).

### *Equal Protection Analysis*

The Fourteenth Amendment to the United States Constitution provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." In two separate provisions, applicable in different circumstances, our state Constitution provides an equal protection guarantee. *State v. Tester,* 879 S.W.2d 823, 827 (Tenn. 1994); *Tennessee Small School Sys. v. McWherter,* 851 S.W.2d 139, 152 (Tenn.1993). The first provision found in Article 1, Section 8, known as the "law of the land" clause, provides that individuals shall not be deprived of

... liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of ... life, liberty or property but by the judgment of ... peers or the law of the land.

Tenn. Const. art. I, § 8. The second relevant Tennessee constitutional provision, Article XI, Section 8, reads in part:

General laws only to be passed.—The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunities, or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law.

■ This Court recently discussed the application of the equal protection provisions of the state and federal constitutions to a state statute in *Brown v. Campbell County Bd. of Educ.,* 915 S.W.2d 407 (Tenn.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1852, 134 L.Ed.2d 952 (1996):

Both the United States and Tennessee Constitutions guarantee to citizens the equal protection of the laws ....

We have consistently held that these two provisions confer the same protections as does the Fourteenth Amendment to the United States Constitution. *State v. Tester,* 879 S.W.2d at 827; *Tennessee Small School Sys. v. McWherter,* 851 S.W.2d at 152. Thus, in analyzing equal protection challenges, we have followed the analytical framework developed by the United States Supreme Court, which, depending on the nature of the right asserted, applies one of three standards of scrutiny: (1) strict scrutiny, (2) heightened scrutiny, and (3) reduced scrutiny, applying the rational basis test. *State v. Tester,* 879 S.W.2d at 828; *Tennessee Small School Sys. v. McWherter,* 851 S.W.2d at 153.

*Id.* at 412–13.

Equal protection analysis requires strict scrutiny of a legislative classification only when the classification interferes with the exercise of a "fundamental right" or operates to the peculiar disadvantage of a "suspect class." *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 16, 93 S.Ct. 1278, 1287, 36 L.Ed.2d 16 (1973).

*Newton v. Cox,* 878 S.W.2d 105, 109 (Tenn. 1994).

■ Regulations which discriminate on the basis of the classification of speakers may violate equal protection even if the regulations do not violate the underlying protected right. However, equal protection analysis in this case begins with the proposition, as above discussed, that charitable solicitations are fully protected speech under the state and federal constitutions. Consequently, the strict scrutiny standard is also applicable to equal protection analysis in this case. Regulations may classify charitable solicitations under the strict scrutiny standard only if the classification is narrowly tailored to serve a compelling state interest, even if those regulations do not violate the fundamental right protected by the free speech provisions of the constitutions. *See Village of Schaumburg v. Citizens for a Better Envir't,* 444 U.S. 620, 637, 100 S.Ct. 826, 836, 63 L.Ed.2d 73 (1980).

■ Equal protection requires that all persons in similar circumstances be treated alike; but it does not "require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. State,* 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124 (1940). A similar concept of equal protection is found in the Tennessee Constitution. *Doe v. Norris,* 751 S.W.2d 834, 841 (Tenn.1988), *State ex rel. Dept. of Social Services v. Wright,* 736 S.W.2d 84, 85–86 (Tenn.1987), "The initial discretion to determine what is 'different' and what is 'the same' resides in the legislatures of the States," and the legislatures are allowed considerable latitude in establishing classifications and thereby determining what groups are different and what groups are the same. *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982).

### Analysis of the Act

The United States Supreme Court recognized in *Riley* that the State's interest in protecting the public from solicitation fraud is a sufficiently substantial interest to justify narrowly tailored regulation. However, in order to justify the additional limitations on professional solicitors, the State must show that all solicitors are not "similarly situated" and that the differences require additional regulations in order to accomplish the State's stated purpose of protecting the public against fraud. The State must also show that the regulation of professional solicitors under the Act is narrowly tailored to protect the public from fraud.

### Exemptions from the Act

■ The defendants contend that there is no reasonable basis on which to discriminate against the professional solicitor and that, therefore, the additional requirements imposed on the professional solicitor, from which employees and volunteers of charitable organizations are exempted, violate their constitutional rights.

Section 48–3–501(5) (Supp.1989) defines professional solicitors as:

> any person who, for a financial or other consideration, solicits contributions for, or on behalf of, a charitable organization, whether such solicitation is performed personally or through his agents, servants or employees or through agents, servants or employees specially employed by or for a charitable organization, who are engaged in the solicitation of contributions under the direction of such person, or a person who plans, conducts, manages, carries on or advises a charitable organization in connection with the solicitation of contributions. A salaried officer or employee of a charitable organization maintaining a permanent establishment within the state shall not be deemed to be a professional solicitor. However, any salaried officer or employee of a charitable organization that engages in the solicitation of contributions for compensation in any manner for more than one (1) charitable organization, shall be deemed a professional solicitor. No attorney, investment counselor, or banker who advises any person to make a contribution to a charitable organization shall be deemed, as a result of such advice, to be a professional solicitor.

A majority of the states specifically regulate "professional solicitors" and exempt employees and volunteers of charitable organizations by definition. *See, e.g.,* Ala.Code § 13A–9–70 (1994); Ariz.Rev.Stat. Ann § 44–6551 (1994); Ark.Code Ann. § 17–41–101

(Michie 1995); Col.Rev.Stat. Ann. § 6–16–103 (West 1992); Conn. Gen.Stat. Ann. § 21a–190a (West 1994); Ga.Code Ann. § 43–17–2 (Harrison 1994); Haw.Rev.Stat. § 467B–1 (Supp.1992); Ill.Ann.Stat. § 225–460/0.01 (Smith–Hurd 1993); Ind.Code Ann. § 23–7–8–1 (Burns 1994); Iowa Code Ann. § 13C–1 (West 1995); Kan. Stat. Ann. § 17–1760 (1995); Ky.Rev.Stat. Ann § 367.650 (Baldwin Supp.1995); Me.Rev.Stat. Ann. tit. 9 § 5003(10) (West 1980); Mass. Gen. Laws Ann. ch. 68 § 18 (West 1988); Mich. Comp. Laws Ann. § 400.272 (1988); Minn.Stat. Ann § 309.50 Subd. 6 (West 1996); Miss.Code Ann. § 79–11–501(d) (1996); Mo. Ann. Stat. § 407.453 (Vernon 1990); N.H.Rev.Stat. Ann. § 7:21 (1988); N.J. Stat. Ann. § 45:17A–20 (West 1995); N.Y. Exec. Law § 171–a(4) (McKinney 1993); N.C. Gen.Stat. § 131F–3(8) (1994); N.D. Cent.Code § 50–22–01(5) (Supp.1995); Ohio Rev.Code Ann. § 1716.01(I) (Anderson 1992); Okla. Stat. Ann. tit. 18 § 552.2 (West 1986); Or.Rev. Stat. Ann. § 128.801(7) (1990); 10 Pa. Cons. Stat. Ann. § 162.3 (Supp.1996); R.I. Gen. Laws § 5–53–1(10) (1995); S.C.Code Ann. § 33–55–20(9) (Law Co-op 1990); Utah Code Ann. § 76–10–601(2) (1995); 9 Vt. Stat. Ann. § 2471(8) (1993); Va.Code Ann. § 57–48 (Michie Supp.1996); Wash. Rev.Code Ann. § 19.09.020(8) (West Supp.1995–96); W. Va. Code § 29–19–2(7) (Supp.1996); Wis. Stat. Ann. § 440.41(7) (West Supp.1995).

Charitable corporations are required by the Act to register with the Secretary of State and submit reports of their solicitation activity. The most significant justification for imposing additional requirements on professional solicitors under the Act is that charitable organizations are regulated under other statutes while professional solicitors are not. *See* Tenn.Code Ann. § 48–3–504 (Supp. 1989). *See also,* Tennessee Nonprofit Corporation Act, Tenn.Code Ann. § 48–51–701 (1995); § 48–53–104 (1995); § 48–64–301 (1995); Quo warranto actions, Tenn.Code Ann. § 29–35–102 (1980); Administration of Charitable Trusts, Tenn.Code Ann. §§ 35–9–101 to 35–9–106 (1991); Federal tax report-

ing requirements, 26 U.S.C. § 6033 (Supp. 1996).

In addition, professional solicitors may not be directly supervised by the charities on whose behalf they solicit, they have no fiduciary obligation to the charitable organizations, and usually have great discretion in conducting a solicitation campaign and handling the contributions paid to the solicitor for the benefit of the charitable organization. In this case, the agreement between the defendants and the Fraternal Order of Police No. 35 authorized the defendants to train and supervise the solicitors, conduct the solicitations and control the funds received. This arrangement was in sharp contrast to the understanding expressed by prospective donors in the affidavits filed in this case. The record establishes that professional solicitors and the employees and volunteers of charitable organizations are not similarly situated and that the provisions of the Act exempting these entities from the definition of a professional solicitor are narrowly tailored to serve a compelling State interest, the protection of the public from solicitation fraud. The classifications made in Sections 48–3–501(5) do not violate the freedom of speech or equal protection provisions of the state or federal constitutions.[5]

### *Solicitation Notice, Solicitation Literature and Text*

■ The provisions of the Act requiring the filing of solicitation notices, solicitation literature and the text of oral solicitations do not impermissibly burden freedom of speech and are narrowly tailored to accomplish a compelling state interest, the prevention of charitable solicitation fraud. The filing of solicitation campaign notices pursuant to Section 48–3–513(g)(4), serves the purposes of educating the donating public and allowing regulators to monitor solicitation activity. This campaign notice requires a statement of the location from which the campaign is to be conducted, the names and addresses of the persons who will be soliciting contributions and the identification of all bank accounts

5. The exemptions of volunteer fire departments, and religious, educational, and certain charitable organizations in Tenn.Code Ann. § 48–3–502 (Supp.1991), found to be constitutional by the Court of Appeals, were not challenged on appeal to this Court.

where the contributions made will be deposited. Tenn.Code Ann. § 48–3–513(g)(4) (Supp. 1989). This is minimal information required of professional solicitors, who are independent contractors and often have no permanent connection with the community in which they solicit, and who are not otherwise accountable to the public or the state. Consequently, this is not an impermissible burden on free speech.

■ These provisions of the act do not violate equal protection because charitable organizations which solicit by their employees or volunteers are otherwise regulated, as previously discussed.

### *Disclosure Requirements*

■ The defendants contend that the Court of Appeals erred in holding that the disclosure requirements of the Act do not violate the constitutional provisions protecting free speech. Section 48–3–513(j)(1) provides that a professional solicitor,

> disclose at the point of solicitation his name as on file with the secretary, the name of any company or corporation for which he is an agent or employee and that such person or group is a "professional solicitor," who will receive as costs, expenses and fees a portion of the solicited funds raised through the solicitation campaign.

Tenn.Code Ann. § 48–3–513(j)(1) (Supp. 1989).

The requirement that the professional solicitor disclose his or her status as a professional solicitor was not an issue in *Riley*, however, that Court observed that "an unchallenged portion of the disclosure law requires professional fundraisers to disclose their professional status to potential donors, thereby giving notice that at least a portion of the money contributed will be retained." *Riley*, 487 U.S. at 799, 108 S.Ct. at 2679. The Court noted:

> The Act, as written, requires the fundraiser to disclose his or her employer's name and address. Arguably, this may not clearly convey to the donor that the solicitor is employed by a for profit organization, for example, where the employer's

name is "Charitable Fundraisers of America." However, nothing in this opinion should be taken to suggest that the State may not require a fundraiser to disclose unambiguously his or her professional status. On the contrary, such a narrowly tailored requirement would withstand First Amendment scrutiny.

*Id.* at 799, n. 11, 108 S.Ct. at 2679, n. 11. The Court, in effect, acknowledged the lower court's conclusion that the mandated disclosure of a professional solicitor's status, is not unconstitutional. The lower court in *Riley* found:

> The state does have an interest in providing its citizens with as much information as possible concerning the amount of their contributions that actually reach the designated charity. Nevertheless, regulations which involve first amendment speech must be drawn with narrow specificity.
>
> The requirement that a professional solicitor give his name and the name and address of his employer is not burdensome.

*National Fed'n of the Blind v. Riley*, 635 F.Supp. 256, 261 (E.D.N.C.1986).

In *WRG Enter., Inc. v. Crowell*, the relevant issue was whether a total ban on the solicitation of contributions by telephone by professional solicitors violated the freedom of speech provisions of the United States and Tennessee Constitutions. This Court held:

> Prohibition of telephone solicitations is not the least restrictive means available to the State in seeking to protect its citizens from fraud. "Where, as here, a statute imposes a direct restriction on protected First Amendment activity, and where the defect in the statute is that the means chosen to accomplish the State's objectives are too imprecise, so that in all its applications the statute creates an unnecessary risk of chilling free speech, the statute is properly subject to facial attack."

*WRG Enter., Inc. v. Crowell*, 758 S.W.2d at 217 (quoting *Munson*, 467 U.S. at 967–68, 104 S.Ct. at 2852–53).

The Act, as amended, does not impose a total ban on telephone solicitation. It only requires that the solicitor provide minimum

information about the relationship of the solicitor to the charitable organization and its cause. Though the requirement that a professional solicitor disclose his status and that the charity will not retain all of the funds is a restraint on free expression, it is a small burden on the solicitor, and is directly related to the objectives of letting the potential donor know that he or she is not dealing with a volunteer and that the entire purchase price of the jellies will not be received by the charitable organization. No lesser restrictive means of effectively achieving this goal has been presented to the Court.[6] The conclusion is that the disclosure provisions set forth in Section 48–3–513(j)(1) do not violate the freedom of speech provisions of the federal and state constitutions.

### Registration Fees and Bond Requirements

The defendants next challenge the fee and bond requirements of the Act as the imposition of a tax for the privilege of engaging in protected speech. As stated previously, the Act imposed a $1,000 (now $800) annual registration fee and a $10,000 (now $25,000) bond on professional solicitors:

(a) No person shall act as a professional solicitor for a charitable organization subject to the provisions of this part unless he has first registered with the secretary of state. Registration shall include the filing of a complete application, bond and filing fee....

(b) Every person shall, before being employed in any manner whatsoever within this state by a professional solicitor, make application to the secretary of state for a certificate as an employee.... The annual fee for an employee certificate shall be ten dollars ($10.00).

(c) The applicant shall, at the time of making application, file with and have approved by the secretary of state, a bond in which the applicant shall be the principal obligor in the sum of ten thousand dollars ($10,000) with one (1) or more sureties....

(d) The annual registration fee for every person who is a professional solicitor in this state shall be one thousand dollars ($1,000).

Tenn.Code Ann. § 48–3–507 (Supp.1989). The Court of Appeals held that these fees were impermissible license taxes on the privilege of speech in violation of the constitutional provisions guaranteeing freedom of speech. The court rejected the State's argument that professional solicitors are more likely to defraud or mislead the public than employees and volunteers of charitable organizations. Its conclusion was based on the finding that the additional fees imposed on professional solicitors were not justified as a means of defraying the cost of regulating charitable solicitations.

■ Licensing fees imposed upon businesses that affect expression, "must be nominal and imposed only as a regulatory measure to defray the expenses of policing such activities." *Ellwest Stereo Theater, Inc. v. Boner,* 718 F.Supp. 1553, 1574 (M.D.Tenn. 1989); *see also Murdock v. Commonwealth of Pennsylvania,* 319 U.S. 105, 113–14, 63 S.Ct. 870, 875, 87 L.Ed. 1292 (1943).

In *Murdock,* where the challenged ordinance provided that a license be purchased by persons canvassing or soliciting within the city, the Court stated, "The power to tax the exercise of a privilege is the power to control or suppress its enjoyment." *Id.* at 112, 63 S.Ct. at 874. The licensing requirement in that case was declared invalid:

[T]he present ordinance is not narrowly drawn to safeguard the people of the community in their homes against the evils of solicitations. As we have said, it is not merely a registration ordinance calling for an identification of the solicitors so as to give the authorities some basis for investigating strangers coming into the community. And the fee is not a nominal one, imposed as a regulatory measure and calculated to defray the expense of protecting

---

**6.** The suggestion that the State may publish the information it receives from post solicitation disclosure forms and vigorously enforce its antifraud laws as a more narrowly tailored option must be rejected as far less effective in letting the

public know whether the person who has called them on the telephone is a professional solicitor and whether their contribution will go directly to the charity.

those on the streets and at home against the abuses of solicitors.... The ordinance is not narrowly drawn to prevent or control abuses or evils arising from that activity. Rather, it sets aside the residential areas as a prohibited zone, entry of which is denied petitioners unless the tax is paid.

*Id.* at 116–17, 63 S.Ct. at 876–77 (citations omitted). That Court noted, however,

The constitutional difference between [a regulatory measure to defray the expenses of policing the activities in question] and a tax on the exercise of a federal right has long been recognized. While a state may not exact a license tax for the privilege of carrying on interstate commerce it may, for example, exact a fee to defray the cost of purely local regulations in spite of the fact that those regulations incidentally affect commerce.

*Id.* at 114, n. 8, 63 S.Ct. at 875, n. 8 (citations omitted); *see e.g., Broadway Books, Inc. v. Roberts,* 642 F.Supp. 486, 493 (E.D.Tenn. 1986) (A $500 annual license fee for adult oriented establishments was held to be constitutional because the city demonstrated that the yearly costs of processing each license application and enforcing the provisions of a regulatory ordinance were comparable to the fee.).

Thus, the fees are consistent with the guarantees of free expression and equal protection if the State can prove that the fees are no more than that amount necessary to pay for the administrative and enforcement costs of the Act. *See Cox v. New Hampshire,* 312 U.S. 569, 577, 61 S.Ct. 762, 766, 85 L.Ed. 1049 (1941).

█ The record does not contain sufficient evidence on which a determination of the costs of administering and enforcing the Act can be made. There is not sufficient evidence in the record on which to determine if the fees charged bear any reasonable relationship to the costs of administering and enforcing the Act. This is a disputed question of material fact, consequently summary judgment cannot be granted on this issue. *Byrd v. Hall,* 847 S.W.2d 208, 215 (Tenn. 1993). This factual issue can be determined on remand.

█ Likewise, there is not sufficient evidence in the record on which to determine if the bond required by Section 48–3–507(c) provides any protection to the public or if the costs of the bond bear any reasonable relationship to the costs of administering and enforcing the Act. This, also, is a disputed issue of material fact and precludes the entry of summary judgment with regard to the requirement of a bond.

### *Conclusion*

The conclusion is that the challenged provisions of the Act, except those sections imposing fees and a bond, sections 507(a)(b)(c)(d), do not violate the freedom of speech or the equal protection provisions of the State or Federal Constitution.

Dismissal of the pleadings alleging violations of Sections 507(a)(b)(c)(d) is reversed, and the case is remanded for further proceedings consistent with this opinion.

Costs are taxed one-half against the State and one-half against the defendants.

BIRCH, C.J., and DROWOTA, ANDERSON and WHITE, JJ., concur.